Filed 7/22/26; Modified and Certified for Pub. 8/6/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL DOMINIC BOCANEGRA,<br><br>    Defendant and Appellant. | H052697<br>(Santa Clara County<br> Super. Ct. No. 162886) |

In this case, the trial court denied Paul Dominic Bocanegra's petition for resentencing under Penal Code section 1172.6 at the prima facie stage on the ground that the record of conviction showed Bocanegra is ineligible for resentencing. (Subsequent undesignated statutory references are to the Penal Code.) However, under section 1172.6 the prima facie inquiry is " 'limited.' " (*People v. Patton* (2025) 17 Cal.5th 549, 562 (*Patton*).) While a court may consider whether the record of conviction refutes eligibility allegations at this stage (*id*. at pp. 562, 564), "a trial court should not engage in 'fact finding involving the weighing of evidence or the exercise of discretion' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*)). Indeed, at the prima facie stage, the strength of the evidence in the record is not material. (*Patton*, at p. 567, fn. 10.) Instead, as the Supreme Court admonished in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), at the prima facie stage the question in applying section 1172.6 is not whether it is likely that

the defendant was convicted of murder on a now-invalid grounds "but whether the court's jury instructions [or other aspect of the record of conviction] foreclose that possibility that possibility *as a matter of law*." (*Id*. at p. 470.)

As explained below, we conclude that the trial court exceeded the limited scope of review permitted at the prima facie stage under section 1172.6 and engaged in fact finding that should have been reserved for the evidentiary stage. Although the verdict and jury instructions on the special circumstance found true by the jury showed that two of the three requirements for direct aiding and abetting liability were satisfied, the record of conviction did not show that the final requirement was satisfied and, thus, did not establish direct aiding and abetting liability as a matter of law. In addition, while the special circumstance finding suggests that the jury found Bocanegra guilty of murder based on direct aiding and abetting, which remains a valid theory, it is possible that the jury found Bocanegra guilty based on conspiracy and a natural and probable consequences theory, which is now invalid. As a consequence, under the strict test that the Supreme Court has interpreted section 1172.6 to impose, the record of conviction does not conclusively refute Bocanegra's allegations that he was convicted of a now-invalid theory of murder, and the trial court should have proceeded beyond the prima facie stage to an evidentiary hearing to determine whether in fact Bocanegra was convicted based on a now-invalid theory.

Accordingly, we reverse the denial of Bocanegra's petition for resentencing and remand with instructions to issue an order to show cause and to conduct an evidentiary hearing on the petition.

## I. BACKGROUND

### A. The Underlying Offenses

Because the details of the offenses underlying Bocanegra's conviction for murder are not material to this appeal, we provide only a short description of those offenses,

2

which is drawn from the opinion on the direct appeal.  (See *People v. Robledo* (H013842, July 3, 1997 [nonpub. opn.]).)

In July 1992, a gray Chevrolet passed Jesse Guerrero while he was pumping gas. In the car were Bocanegra and two other gang members, including one who had pulled a gun on Guerrero a week earlier.  Afterwards, as Guerrero was driving a companion home, he passed the gray car, and the occupants of the two cars "mad dogged" each other—that is, they looked at each other in a way intended to provoke a fight.  The gray car followed Guerrero's car, pulled up next to it, and both Bocanegra and his companion Bryan Robledo again "mad dogged" Guerrero.  Then, Robledo raised a handgun, pointed it at Guerrero, and, from a distance of about two feet, fired eight shots.

Guerrero was hit several times, and a companion drove home and called the police.  After officers arrived, Guerrero was taken to a hospital, where he was pronounced dead.

## B.  The Initial Proceedings

After Bocanegra, who was 17 years old at the time of the killing, was transferred to criminal court, Bocanegra, Robledo, and the driver of the gray Chevrolet were charged with Guerrero's murder (§ 187; count 1).  Robledo also was charged with possession of a firearm by an ex-felon (§ 12021, subd. (a)), and all three defendants were charged with committing murder for the benefit of a criminal street gang (§ 186.22, subd. (c)). Additionally, in connection with the murder count, the information alleged three special circumstances: intentionally killing while lying in wait (§ 190.2, subd. (a)(15)), use or possession of a firearm (§§ 12022.5., subd, (a), 12022, subd. (a)(1)), and committing an offense for the benefit of a criminal street gang (§ 186.22, subd. (b)).

In 1994, a jury convicted Bocanegra, Robledo, and the driver of first degree murder.  The jury also found the special circumstances allegations—including the lying-in-wait circumstance—true.  Finally, the jury convicted Robledo of possession of a

firearm by an ex-felon and Bocanegra of committing an offense for the benefit of a criminal street gang.

In 1995, Bocanegra was sentenced to life in prison without possibility of parole. However, in 2015, Bocanegra was resentenced under section 1170.126 to 29 years to life.

## C. The Petition for Resentencing

In July 2023, Bocanegra filed a petition for resentencing under section 1170.95, which by that time had been renumbered section 1172.6. (See Stats. 2022, ch. 58, § 10.) The petition was on a printed form, and Bocanegra checked the boxes on the form for allegations that, among other things, (1) the charges against him allowed the prosecution to use "felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime"; (2) after a trial he was convicted of murder, attempted murder, or manslaughter; and (3) he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The District Attorney opposed resentencing. In addition to requesting judicial notice of the jury instructions and verdicts at the trial, he argued that Bocanegra was ineligible for resentencing under section 1172.6 because the jury's verdict on the murder count and finding on the lying-in-wait special circumstance "establish[] as a matter of law that Petitioner either . . . killed the victim" or "aided and abetted the actual killer with intent to kill," both of which remain valid theories of murder.

After holding a hearing on whether Bocanegra had made a prima facie case for relief, the trial court denied Bocanegra's petition on the ground that "[t]he record of conviction shows that Petitioner is ineligible for resentencing as a matter of law." The court recognized that the jury was instructed on conspiracy and the natural and probable consequences doctrine. However, it reasoned, by finding true the lying-in-wait special

4

circumstance, "the jury necessarily determined beyond a reasonable doubt that the Petitioner was the actual killer or acted with the intent to kill" and, thus, "acted with an intent to kill." The trial court also reasoned that, in reaching its verdicts, "[t]he jury must have rejected culpability under the natural and probable consequence theory, or any other lesser theories of culpability. . . ."

Bocanegra filed a timely notice of appeal.

## II. Discussion

Bocanegra argues that the allegations in his petition for resentencing made out a prima facie case for relief under the section 1172.6 and that the trial court erred in ruling that the record of conviction conclusively refuted those allegations. We review trial court orders at the prima facie stage de novo. (See, e.g., *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

### A. Section 1172.6

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill 1437) "to more equitably sentence offenders in accordance with their involvement in homicides" and "to ensure that murder liability is not imposed on a person who is not an actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subds. (b), (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 846 (*Gentile*), superseded by statute on other ground as stated in *People v. Oyler* (2025) 17 Cal.5th 756, 836; *Lewis*, *supra*, 11 Cal.5th at p. 957.) First, Sen. Bill 1437 restricted the scope of the felony-murder rule. (See *Gentile*, *supra*, 10 Cal.5th at p. 842.) It amended section 189 to impose murder liability on an individual involved in a qualifying felony only if (1) the individual was "the actual killer," (2) the individual aided, abetted, or otherwise assisted the actual killer "with the intent to kill," or (3) the individual was a "major participant" in the underlying felony and acted "with reckless indifference."

5

(§ 189, subd. (e).) Second, Sen. Bill 1437 effectively eliminated natural and probable liability for murder. (*Gentile*, at p. 846; *Lewis*, at p. 957.) It amended section 188 to provide that "a principal in a crime shall act with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Sen. Bill 1437 also afforded retroactive relief to individuals convicted under the murder theories the legislation rendered invalid. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) Specifically, under section 1172.6, a person is eligible for resentencing if three requirements are satisfied: (1) The person was charged with murder under a theory of a felony murder, the natural and probable consequences doctrine, or another theory in which malice is imputed based solely on participation in a crime, (2) the person was convicted of murder, attempted murder, or manslaughter, and (3) the person "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019"—the effective date of Sen. Bill 1437. (§ 1172.6, subd. (a)(3); see *Strong*, at p. 708.) If a person is eligible for resentencing under section 1172.6, the person is resentenced as if he or she had not previously been sentenced before, and the new sentence may not exceed the initial one. (§ 1172.6, subd. (d)(1).)

The resentencing process under section 1172.6 has four stages. First, a petitioner files a declaration stating, among other things, that all requirements for eligibility are met, and the trial court verifies whether on its face the petition is compliant. (§ 1172.6, subd. (b)(1), (2); see *People v. Antonelli* (2025) 17 Cal.5th 719, 724.) Second, if the petition is compliant, a hearing is held to determine whether the petitioner has made out a prima facie case for relief. (§ 1172.6, subd. (c).) Third, if such a case is made, the trial court issues an order to show cause and holds a hearing to determine whether in fact the petitioner is entitled to relief, with the prosecution bearing the burden of proving beyond

a reasonable doubt that the petitioner is guilty of murder or attempted murder under the law as amended by Sen. Bill 1437.  (§ 1172.6, subd. (d)(3); see *Patton*, *supra*, 17 Cal.5th at p. 559).  If the prosecution does not satisfy its burden, the trial court vacates the petitioner's conviction and resentences the petitioner.  (§ 1172.6, subd. (d)(3).)

As noted above, "the prima facie inquiry" conducted at the second stage of the section 1172.6 process "is limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  While the prima facie inquiry does not duplicate the first stage's facial inquiry, "the 'prima facie bar was intentionally and correctly set very low.' " (*Id* at p. 972.)  At the prima facie stage, the objective is merely "to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.)  Accordingly, in conducting the prima facie inquiry, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)  Instead, as a general rule, the trial court " 'takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.' " (*Id.* at p. 971.)

There is an exception to this general rule.  "Conclusory allegations . . . are particularly subject to refutation by the record of conviction." (*Patton*, *supra*, 17 Cal.5th at p. 564.)  Accordingly, in determining whether a prima facie case has been shown, trial courts may examine jury instructions, the verdict, and other parts of the record of conviction to determine whether that record refutes the petition's allegations.  (*Lewis*, *supra*, 11 Cal.5th at p. 972; but see *Patton*, at p. 568 [hearing transcripts may not be used to prove disputed facts].)  If the record of conviction " ' "contain[s] facts refuting the allegations in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971.)  However, the record of conviction must "establish conclusively" such facts.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  Moreover, as the Supreme  Court stressed last year, "[a] conclusion that the

7

record refutes an allegation at the prima facie state is *not . . .* a conclusion about the strength of evidence in the record." (*Patton*, at p. 567, fn. 10, italics added.) Consequently, as noted above, in determining whether jury instructions or some other part of the record of conviction conclusively establishes a fact at the prima facie stage, "the question is not whether it is *likely* a defendant could have acted in such a way, but whether the jury instructions foreclose that possibility *as a matter of law*." (*Curiel*, *supra*, 15 Cal.4th at p. 470.)

## B. Analysis

Although Bocanegra's petition alleged that he satisfied all the requirements for resentencing under section 1172.6 (see § 1172.6, subd. (a)(1)-(3).) the trial court ruled that Bocanegra failed to make a prima facie case for relief based on the verdict and the instruction on the lying-in-wait special circumstance. As explained below, in so doing, the trial court exceeded the limited inquiry that the Supreme Court has allowed at the prima facie stage. It was appropriate for the trial court to consider the record of conviction, including the instructions and the verdicts, to determine if the record conclusively refutes the petition's allegations. However, under the Supreme Court's decisions, the record of conviction conclusively refutes such allegations only if it forecloses, as a matter of law, eligibility for resentencing under section 1172.6. That is not the case here.

### 1. *The Lying-in-Wait Special Circumstance*

The jury's finding on the lying-in-wait special circumstance established several requirements for direct aiding and abetting. However, it did not establish all the requirements and therefore did not foreclose as a matter of law the possibility that Bocanegra is eligible for resentencing.

We begin with the Supreme Court's decision in *People v. Curiel*, *supra*, 15 Cal.5th 433. In addition to holding that at the prima facie stage the record of conviction must

8

foreclose as a matter of law the possibility of eligibility for resentencing (*id*. at p. 470), *Curiel* applied that requirement to a case similar to this one. Much like Bocanegra, the defendant in *Curiel* was charged with first degree murder, and a special circumstance— albeit for a gang murder rather than for lying in wait—was alleged. (*Id.*, at p. 440.) The jury was instructed that another gang member perpetrated the murder, and the prosecutor argued that defendant was guilty of first degree murder under a direct aiding and abetting theory and under the natural and probable consequences doctrine. (*Id.* at p. 445.) The jury convicted the defendant of first-degree murder and found true the gang-murder special circumstance. (*Id*. at p. 440.) When the defendant later petitioned for resentencing under what is now section 1172.6, the trial court denied the petition on the ground that the jury's special circumstance finding established an intent to kill and therefore the defendant was convicted on a still-valid theory of murder. (*Id*. at p. 447.) The Supreme Court disagreed. (*Id*. at p. 471.)

The Supreme Court recognized that the gang-murder special circumstance instruction required the jury to find an intent to kill, the jury's special circumstance finding had preclusive effect, and therefore the finding should be considered in determining whether the petitioner made a prima facie case under section 1172.6. (*Curiel*, *supra*, 15 Cal.5th at pp. 450-460.) However, the Court also recognized that, "after the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought." (*Id*. at p. 462.) Consequently, the Court continued, "a finding of intent to kill . . . does not by itself establish any valid theory of liability." (*Id*. at p. 463.) Instead, an allegation that the petitioner cannot currently be convicted of murder on a valid theory (and therefore is eligible for resentencing under section 1172.6) "is not refuted by the record unless the record conclusively establishes every element of the offense" under a still-valid theory. (*Ibid*.) "If only *one* element of the offense is

9

established by the record, the petitioner still could be correct that he or she could not be currently convicted of the relevant offense based on the absence of *other* elements." (*Ibid*.)

The Supreme Court further held that the record of conviction in *Curiel* failed to conclusively establish all the elements needed for direct aiding and abetting. Direct aiding and abetting, the Court observed, requires a sufficient mens rea as well as a sufficient actus reus (*Curiel, supra*, 15 Cal.5th at p. 441), and to satisfy the mens rea requirement, "the aider and abettor must have 'knowledge of the unlawful purpose of the perpetrator' and the 'intent or purpose of committing, encouraging, or facilitating' the offense" (*id*. at p. 468). An intent to kill, "viewed in isolation," does not establish the required knowledge of the perpetrator's purpose (*id*. at p. 441) and therefore "is insufficient standing alone to render a person culpable for another's acts" under a direct aiding and abetting theory (*id*. at p. 468). Because the record of conviction in *Curiel* did not establish the elements of direct aiding and abetting other than an intent to kill, the Supreme Court concluded that the special circumstance finding in that case was "insufficient to rebut Curiel's allegation that he could not be convicted of murder under current law" and conclusively establish ineligibility at the prima facie stage. (*Id.* at p. 471.)

This case is indistinguishable. Here, as in *Curiel*, the petitioner alleged in his petition for resentencing that he could not presently be convicted of murder because of Sen. Bill 1437's changes. In addition, as in *Curiel*, the jury found true a special circumstance establishing that petitioner acted with an intent to kill. And, like the gang-murder special circumstance found in *Curiel*, the lying-in-wait special circumstance found in this case did not establish all the elements of direct aiding and abetting. Consequently, like the special circumstance in *Curiel*, the special circumstance in this

case did not foreclose, as a matter of law, the possibility that Bocanegra is eligible for resentencing.

As the Supreme Court recognized in *Curiel*, "to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant [1] aided or encouraged the commission of the murder [2] with knowledge of the unlawful purpose of the perpetrator and [3] with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*Curiel*, *supra*, 15 Cal.5th at p. 466.) The trial court's special circumstance finding established only two of these requirements. The jury was instructed that, if the defendant was not the actual killer, to find the lying-in-wait special circumstance allegation true, the defendant had to assist the killing with the intent to kill: "If you find that the defendant was not the actual killer of a human being, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant, with intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested or assisted any actor in the commission of the murder in the first degree." Thus, in finding the lying-in-wait special circumstance true, the jury found that Bocanegra "aided or encouraged the commission of the murder," which satisfies the first requirement for aiding and abetting, and that Bocanegra acted with "intent to kill," which satisfies the third requirement for aiding and abetting. However, nothing in the instruction for the lying-in-wait special circumstance required the jury to find " 'knowledge of the unlawful purpose of the perpetrator,' " the second element of aiding and abetting. (*Ibid*.)

Thus, even though the lying-in-wait special circumstance found true in this case establishes more of the elements of direct aiding and abetting than the gang-murder special circumstance found in *Curiel*, the record of conviction in this case still fails to establish every element of direct aiding and abetting liability. Consequently, just as in *Curiel*, the special circumstance finding does not foreclose, as a matter of law, the

11

possibility that Bocanegra was convicted on a now-invalid theory and therefore does not conclusively refute the petition's allegations of eligibility for resentencing under section 1172.6.

### 2. *The Natural and Probable Consequences Doctrine*

The trial court also asserted that the jury must have rejected any culpability under the natural and probable consequences theory in finding Bocanegra guilty of first degree murder and the special circumstance true. We disagree. While the lying-in-wait special circumstance suggests that the trial court found Bocanegra guilty of first degree murder on an aiding and abetting theory, it does not foreclose as a matter of law the possibility that the jury found Bocanegra guilty of first degree murder based on a different theory using the now-invalid natural and probable consequences doctrine.

In particular, the jury could have convicted Bocanegra of first degree murder based on conspiracy and the natural and probable consequence doctrine. The trial court instructed the jury that, if Bocanegra joined a criminal conspiracy, he was "not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but . . . also for the natural and probable consequences of any crime of any co-conspirator to further the object of the conspiracy . . . ." Indeed, the instruction specifically noted that, if the jury found Bocanegra guilty of conspiracy, it had to determine "whether the crime alleged in Count ONE, namely MURDER[,] was perpetrated by a coconspirator in furtherance of such conspiracy *and was* [*the*] *natural and probable consequence* of the agreed upon criminal objective of such conspiracy." (Italics added.) The jury also was instructed that the conspiracy in this case might have been to "discharge a firearm at an occupied vehicle." (Capitalization omitted.) Consequently, under the conspiracy instruction given it, the jury could have found that Bocanegra conspired with Robledo to discharge a firearm into an occupied vehicle and, based on that crime, found him guilty of a murder that was a natural and probable

12

consequence of discharging the firearm. Moreover, if Robledo was guilty of first degree murder, nothing in the jury instructions prevented the jury from finding Bocanegra guilty of first degree murder as well.

In addition, if the jury found Bocanegra guilty of first degree murder based on conspiracy and a natural and probable consequences theory, it could have found the lying-in-wait special circumstance satisfied. The instruction given the jury required the jury to consider the circumstance if it found the defendant guilty of first degree murder. However, the instruction did not require that the defendant be found guilty of first degree murder on any particular theory. As a consequence, it is possible that the jury found Bocanegra guilty of murder based on conspiracy and a natural and probable consequences theory, and it then found the lying-in-wait special circumstance true. Whether this scenario is likely or not, it is sufficient for purposes of the prima facie stage because, as noted above, at that stage "the question is not whether it is likely" a defendant acted in certain way, but whether the "jury instructions foreclose that possibility as a matter of law." (*Curiel*, *supra*, 15 Cal.5th at p. 470, italics omitted.)

At oral argument, the Attorney General argued that the lying-in-wait special circumstance instruction required the jury to find Bocanegra guilty on a direct aiding and abetting theory. The Attorney General based this argument on the reference in the instruction to whether defendant "aided" or "abetted" the murder at issue, which the Attorney General contends implicitly required the jury to find the requirements for direct aiding and abetting satisfied. However, the trial court merely instructed the jury that, if the defendant was not the actual killer, the jury could find the special circumstance true only if the defendant "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted" in commission of the murder. The Supreme Court has rejected the suggestion that such language instructs a jury to find the requirements of direct aiding and abetting satisfied.

13

In *In re Lopez* (2023) 14 Cal.5th 562, the jury was instructed that, if the defendant was not the actual killer, to find a gang-murder special circumstance true it had to find the defendant " 'aided, abetted, counseled, commanded, induced, solicited, requested, or assisted' " in the commission of the murder with the intent to kill. (*Id.* at p. 586.) Much as here, in *Lopez* the Attorney General argued that this instruction required the jury to find direct aiding and abetting. (*Id.* at p. 587.) The Supreme Corut rejected this argument: "While the relevant language evokes similar concepts, it does not cover all of the elements of direct aiding and abetting" because it "falls . . . short" of explaining the requirements of direct aiding and abetting. (*Id.* at pp. 587, 588; see also *People v. Morris* (2026) 19 Cal.5th 671, 692 [holding that, although section 189, subd. (e)(2) refers to "aided" and "abetted," it "does not require the same knowledge requirements as direct aiding and abetting"].)

We therefore conclude that the verdict and jury instructions do not foreclose, as a matter of law, the possibility that the jury found Bocanegra guilty of murder based on conspiracy and a natural and probable consequences theory.

### 3. *The Attorney General's Alternative Ground*

The Attorney General also defends the denial of Bocanegra's petition for resentencing on an alternative ground not considered by the trial court. (See, e.g., *LaBarbera v. Security National Ins. Co* (2022) 86 Cal.App.5th 1329, 1339, fn. 8 ["we may affirm a ruling on a ground not adopted by the trial court"].) The Attorney General argues that the requirements for the lying-in-wait special circumstance are more stringent than those for lying-in-wait murder and therefore the jury's special circumstance finding conclusively establishes that Bocanegra was liable for murder by lying in wait. Here again, the Attorney General's argument fails because the lying-in-wait special circumstances did not require the jury to find all the requirements for aiding and abetting liability.

14

The lying-in-wait special circumstance subjects violators to death or imprisonment for life without parole.  (§ 190.2, subd. (a)(15).)  As the Attorney General notes, when Bocanegra was tried, the requirements were "slightly different from, and more stringent than, the requirements for lying-in-wait murder." (*People v. Cage* (2015) 62 Cal.4th 256, 278 (*Cage*).)  While a defendant is guilty of first degree murder "perpetrated *by means of* . . . lying in wait" (§ 189, subd. (a), italics added), the lying-in-wait special circumstance in former section 190.2, subdivision (a)(15) required a murder "committed *while* lying in wait" (*Cage*, at p. 278).  In addition, while lying-in-wait murder " 'require[d] only a wanton and reckless intent to inflict injury likely to cause death' " (*ibid.*), then as now, the lying-in-wait special circumstance required that the defendant "intentionally killed the victim" (§ 190.2, subd. (a)(15)).  Accordingly, in *People v. Carpenter* (1997) 15 Cal.4th 312 (*Carpenter*), the Supreme Court observed that "[i]f . . . the evidence supports the special circumstance, it necessarily supports the theory of first degree murder." (*Id*. at p. 388, abrogated on other grounds as stated in *People v. Diaz* (2015) 60 Cal.4th 1176, 1190-1191.)

However, *Carpenter* is distinguishable because in *Carpenter* the defendant was not an accomplice charged with conspiracy or aiding and abetting a murder.  Instead, he was the perpetrator who committed the murders in question.  (*Carpenter*, *supra*, 15 Cal.4th at p. 344.)  Moreover, there is no mention of accomplice liability in *Carpenter*'s discussion of lying-in-wait murder and the related special circumstance.  (*Id*. at pp. 388-391.)  Consequently, when the Supreme Court stated in *Carpenter* that, if the evidence supports the lying-in-wait special circumstance, it necessarily supports first degree murder as well, the Court was referring to actual killers, not accomplices.  Accordingly, *Carpenter* provides no authority for assuming that finding a lying-in-wait special circumstance for an accomplice necessarily shows murder liability for the accomplice.

(See, e.g., *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348 ["A decision . . . is not authority for what it does not consider."].)

In fact, section 190.2 plainly does not establish accomplice liability in this case. With respect to accomplices, the section provides: "Every person, not the actual killer, who with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4." (§ 190.2, subd. (c); see also § 190.2, subd. (d) [relaxing the mens rea requirement for certain crimes].)  Like the instruction given the jury, while this provision requires both an "intent to kill" and assistance in the killing, it does not require the third element of direct aiding and abetting: "knowledge of the unlawful purpose of the perpetrator." (*Curiel*, *supra*, 15 Cal.5th at p. 468.)  Thus, contrary to the Attorney General's suggestion, the jury's finding of the lying-in-wait special circumstance plainly does not establish, as a matter of law, liability for murder based on direct aiding and abetting.

The Supreme Court's decision in *People v. Bonilla* (2007) 41 Cal.4th 313 (*Bonilla*) does not suggest otherwise.  The Attorney General quotes a passage from *Bonilla* stating that former section 190.2, subdivision (b) provided that every person " 'found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting or assisting any actor in the commission of murder in the first degree' " shall be punished by death or life in prison without the possibility of parole for murders involving, among other things, lying-in-wait. (*Bonilla*, *supra*, 41 Cal.4th at p. 331.)  The quoted language suggests that, by requiring that the individual be found guilty of intentionally aiding a murder, former section 190.2's lying-in-wait special circumstance applied only to accomplices already found guilty of murder based on direct aiding and abetting.

However, Proposition 115 replaced this language in 1990 (Ballot Pamp., Primary Elec. (June 5, 1990) text of Prop. 115, § 10, p. 66), years before the murder of Jesse Guerrero. The current language does not refer to individuals "found guilty" of intentionally assisting in the commission of a murder; it refers to persons, "not the actual killer, who, with the intent to kill, . . . aid[]" or assist in the commission of a murder involving a special circumstance.  (§ 190.2, subd. (c).)

We conclude that the jury's special circumstance finding does not establish as a matter of law that Bocanegra is liable for murder under a still-valid theory of murder, and therefore the record of conviction does not conclusively refute the allegations in Bocanegra's petition for resentencing that he is eligible for resentencing under section 1172.6, which means he made the necessary prima facie showing for relief.  As a consequence, the trial court should not have decided whether Bocanegra was convicted under a direct aiding and abetting theory until conducting an evidentiary hearing at the third stage of the section 1172.6 process.

### III.  DISPOSITION

The order denying appellant's petition for resentencing under section 1172.6 is reversed, and this matter is remanded to the trial court with instructions to issue an order to show cause under section 1172.6, subdivision (c) and to hold an evidentiary hearing under section 1172.6, subdivision (d).

17

                                                  _____

                                                  BROMBERG, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
CHUNG, J.*

*People v. Bocanegra*
H052697

_____

     **\*** Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/6/26

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL DOMINIC BOCANEGRA,<br><br>    Defendant and Appellant. | H052697<br>(Santa Clara County<br>Super. Ct. No. 162886)<br><br>**ORDER MODIFYING OPINION, DENYING REHEARING AND CERTIFYING OPINION FOR PUBLICATION**<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

On the court's own motion, the opinion filed herein on July 22, 2026, is ordered modified as follows:

1.      On page 6, the first full sentence of the first paragraph is deleted and replaced with the following:

Second, Sen. Bill 1437 effectively eliminated natural and probable consequences liability for murder.

The opinion in the above-entitled matter filed on July 22, 2026, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in judgment.

_____
BROMBERG, J.


_____
DANNER, ACTING P.J.


_____
CHUNG, J.*


*People v. Bocanegra*
H052697

_____

      **\***      Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| Trial Court: | Santa Clara County |
|---|---|
| | Superior Court No.: 162886 |
| | |
| Trial Judge: | The Honorable Benjamin Williams |

Attorney for Defendant and Appellant
Paul Dominic Bocanegra:

Peter F. Goldscheider
under appointment by the Court
of Appeal for Appellant

Attorneys for Plaintiff and Respondent
The People:

Rob Bonta
Attorney General

Charles C. Ragland,
Chief Assistant Attorney General

Jeffrey M. Laurence,
Senior Assistant Attorney General

Donna M. Provenzano,
Supervising Deputy Attorney General

Victoria Ratnikova,
Deputy Attorney General

*People v. Bocanegra*
H052697